801 So.2d 295 (2001)
In the Interest of J.W. a child, Petitioner,
v.
Mary LEITNER, as Superintendent of the Southwest Florida Juvenile Detention Center, Department of Juvenile Justice, John Walker, as Superintendent of the Collier County Detention Center, Department of Juvenile Justice, Respondent.
No. 2D01-4747.
District Court of Appeal of Florida, Second District.
December 14, 2001.
*296 Robert R. Jacobs, II, Public Defender, and Michelle E. Berthiaume, Assistant Public Defender, Fort Myers, for Respondent.
Robert A. Butterworth, Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Petitioner.
FULMER, Acting Chief Judge.
By prior unpublished order we granted J.W.'s petition for writ of habeas corpus. In his petition, J.W. contends that he was illegally confined in secure detention following his commitment and pending placement in a high-risk residential program. The question raised in this proceeding is: Must a child meet statutory "detention criteria" to qualify for placement in secure detention under these circumstances? We hold that children awaiting placement in a high-risk residential program may not be held in secure detention unless they meet detention criteria.
The State argues that section 985.215(10)(c), Florida Statutes (2001), governs the detention of children awaiting placement in a high-risk residential program and authorizes secure detention regardless of whether the child meets detention criteria. We disagree. Section 985.215(10)(c) reads: "If a child is committed to a high-risk residential program, the child must be held in detention care until placement or commitment is accomplished." (Emphasis added.) "Detention care" is not synonymous with "secure detention." See § 985.03(19) (defining three types of detention care, one of which is secure detention). Thus, section 985.215(10)(c), by its terms alone, does not mandate or even authorize secure detention. We reach our conclusion that secure detention may only be utilized if detention criteria are met by reading subsection (10)(c) within the context of other subsection (10) provisions.
Section 985.215(10) addresses detention care for all children awaiting dispositional placement in any commitment program. Subsection (10)(a)2 provides that "[t]he court must place all children who are adjudicated and awaiting placement in a residential commitment program in detention care." Subsection (10)(a)1 provides that removal from detention care must occur within five days. It further provides that "[a]ny child held in secure detention during the five days must meet detention admission criteria pursuant to this section." This sentence contains no exception for children awaiting placement in a high-risk program. Subsection (10)(a)1 next addresses time restraints on the continuation of detention for children awaiting placement in moderate-risk programs. No such restraints are set forth for children awaiting placement in a high-risk program. As such, we agree with the First District that the significance of section 985.215(10)(c) is that it eliminates-for high-risk children-the time constraints that apply to those in detention care pending placement in lessrestrictive commitment programs. See R.E.D. v. Gnat, 681 So.2d 847 (Fla. 1st DCA 1996).
*297 Throughout chapter 985, and particularly in section 985.215, the legislature differentiates between the terms "detention care" and "secure detention." Had the legislature intended that children awaiting placement in high-risk programs surrender the benefits of section 985.215(10)(a)1, which authorizes secure detention only if detention criteria are met, it would have used the term "secure detention" instead of "detention care" when it enacted section 985.215(10)(c).
To qualify for secure detention a child must amass twelve or more points on a risk assessment instrument (RAI). The State does not argue that J.W. ever reached that total. The parties have provided to us two RAIs that were utilized during J.W.'s prosecution. At the time of disposition, a hastily-prepared RAI was presented that reflects a score of zero points, which is clearly erroneous because points are assessed for law violations and J.W. has been adjudicated on two offenses that would constitute felonies if prosecuted in the adult division of circuit court. Several months before disposition, at the commencement of the prosecution of J.W., the Department of Juvenile Justice presented an RAI showing J.W. to have accumulated nine points.[1]
Detention of juveniles is governed by statute. We reject the State's argument that we can rely upon record comments by Department of Juvenile Justice personnel about J.W.'s lifestyle to support a determination that he met "detention criteria." And, nothing in the record presented to us indicates that the trial court attempted to avail itself of the benefits of the final paragraph of section 985.215(2), which provides the means for a trial judge to impose a more restrictive form of detention care than is indicated by the RAI.
Because the State failed to demonstrate that J.W. met the requisite criteria to be held in secure detention, we granted the petition for habeas corpus and ordered that he be released from secure detention. However, because all children who have been committed must be placed in detention care awaiting placement, pursuant to section 985.215(10)(a)2, we directed that he be placed in less restrictive detention care.
Petition granted.
NORTHCUTT and CASANUEVA, JJ., Concur.
NOTES
[1] We do not need to decide whether this ninepoint total should properly have been reduced after the adjudicatory process was completed. J.W. initially scored nine points on his RAI because he was charged with a violation of section 812.131(2)(b), Florida Statutes (2001), robbery by sudden snatching, which was correctly denominated a "violent third-degree felony," and which accounted for all of his nine points. J.W. was adjudicated delinquent, however, for the offense of accessory after-the-fact to robbery by sudden snatching. While this remains a felony, see §§ 777.03(2)(c), 921.0022, Fla. Stat. (2001), we question the State's conclusion that this adjudication still qualifies as a "violent third-degree felony."